Good morning, Your Honors. Terry Law for the appellant. May it please the Court. Your Honors, the United States Supreme Court has stated that the Constitution guarantees the right of access to the courts, and that the constitutionally guaranteed right of access to the courts confers upon all citizens the capability of bringing all contemplated challenges to sentences and to conditions of confinement before the courts. That was established long ago in Lewis v. Casey. The petitioner, her appellant in this case, was deprived of this right, the right to access, the right to court review or federal court review of the constitutional claims that he had. He, as the Court is aware, his claims were dismissed as untimely. And this case is again before this Court. And the Court has not yet submitted a petition to the district court to consider whether or not equitable tolling of the statute of limitations was appropriate. When he finally filed his petition in district court, he was represented by counsel. Do I understand that correctly? That is correct, Your Honor. I looked in the record, and if it's there, I couldn't find it. But was there anything submitted to the district court in writing signed by Mr. Astorga, who was represented by counsel, that, number one, he doesn't speak English, or, two, that he couldn't find help in the prison? I didn't see anything from him. Not the second go-round. His counsel submitted a legal memorandum, and in that legal memorandum, he referred to and incorporated a petition that he submitted that was in, that was, I don't know, that it was not necessarily in his handwriting, but that was prepared with help by him, without the assistance of counsel, that did contain his signed declaration stating that he was not able to, you know, it was verified by him. That was in the original petition? That was, Your Honor. And then that was referred to and cited to by Mr. Simon in the subsequent legal memorandum on, that was, that was filed in remand. So there was not a second filing or something additional that was signed by Mr. Astorga. Unfortunately, but that would certainly, I submit, be part of the record for purposes of review. Ms. Law, assuming then that we would accept the fact that he doesn't speak English, what do we do with the problem that there is no Sixth Amendment right to counsel? And if there is no Sixth Amendment right to counsel, how can there be a constitutional right with regard to his inability to speak or read English that would establish a violation? Well, the, the position, Your Honor, is not, is not really connected, our position is not that it's connected to a right to counsel, that, that in any way his translation or his ability to be informed of statute of limitations or learn of the law would be through, in any way, through counsel or through someone legally trained. The, the problem, as this Court is well aware, having, you know, been down this road and having, in fact, in previous cases, expressly recognized the subpar conditions in the prison system, having required that the courts take, or that the prisons, you know, take some affirmative action to correct it, the, the problem is within the prison system. The problem being that there are obviously a, a high number of non-English speaking inmates and significantly subpar conditions as far as the library materials. So we're not, we're not dealing with a matter of appointed counsel or any counsel or, or even providing interpreters or any, any form of legal assistance. It's simply a matter of something that is beyond an individual's control. This is not even, this goes beyond illiteracy. It goes beyond, it's not about being trained or not trained in the law. When we, when the court ---- The question is beyond illiteracy. In other words, doesn't an illiterate inmate have much the same problem? Put him in a law library filled with books he can't read, does it matter what language those books are in if he can't read them? No, that's true, Your Honor. I'm, I would venture to argue, Your Honor, that for, for, for our purposes here, that illiteracy or the ability to read, technically that is more within one's control. In other words, when, when faced with a situation where you have two inmates, one who is a, who is put in a, a, an American prison but is, you know, here legally and is put, put in prison, who is, who was, who is, only speaks Spanish, who was never given an ability to speak English, and an illiterate Native American who was never, never learned English or never learned how to read and write. In other words, maybe conditions made it such that he, you know, didn't have advantages or whatnot, but it didn't necessarily make it beyond his control, as well as the fact that there are English materials available. So whether or not it be through another inmate or through someone else, everything is in English. So it's not totally beyond. I don't know that you're answering Judge Nelson's question. I mean, an illiterate inmate could talk to a literate inmate who could tell him what the law is. Presumably Mr. Estorga could talk to somebody else in the prison who might know, you know, a jailhouse lawyer or whatever who, you know, can read English. I might, you're, you're honest, correct. I might be stretching it there. However, I would, I would just add that although this may not be totally realistic, it is, it is not beyond the realm of possibility that there is not, that there are not, that, that is assuming that there are individuals who can translate for him. In other words, there's certainly in American prisons are going to be English speaking inmates. There's, it's not guaranteed. There's an English speaking inmate who also speaks English. Exactly. But likelihood is they're certainly there. But it's, it's not something that in every, every institution is, is by all means guaranteed. Well, that takes you back to my question. Did he come up with anything that says there was no one there who could help me in Spanish? It. By the way, you're rattling the mic. I'm sorry. Yes. Certainly, no, your, no, Your Honor. The, what, what the district court found and, and what is the problem here is that the development of the factual record was completely inadequate based on what was submitted and really relying upon the initial submission in the original petition. And that. I'm puzzling about the second one where he's got a, where he's got a lawyer. Yes. And he doesn't come up with anything that says, you know, there's nobody there who can help me. And that's, you know, that's kind of where I'm stuck with it at the moment. That, that's, that's true, Your Honor. But. And now we're stuck, maybe that's the wrong word, but now we've got a factual determination by the district judge that there was insufficient grounds to invoke equitable toll. Don't we have to find that clearly erroneous in order to afford relief here? Well, no, Your Honor, because I, we would ask, Your Honor, to, that the court follow the, it's, I don't know if it's the court's recent trend, but what the, this court has done, at least in, in some recent published opinions, which has imposed upon the district court, regardless of whether there was an appointed lawyer, as there was in this case, number one, imposed a more of a, more of a, a duty in fact finding upon the district court. And I would, I would submit that this was not, fact finding was not really made by the district court here. Is that your argument, or is it that we should simply declare that there was a constitutional violation here because of his inability to read or speak English without regard to what the district court's fact findings were on equitable toll? Well, I think the argument, Your Honor, is that, that number one, the inability to speak or read English and thus have access to the court on the claim is, can constitute, first we're asking that the court declare that that can constitute an extraordinary circumstance under the right factual evidence. And that here, the court has once remanded the case for the determination. And that, that determination that, that the district court made was based on a legal memorandum submitted by the attorney in the case, and that what was appropriate, what was more appropriate under the court's order would have been and should be for the court to have the record developed. In other words, that was what the court really did. So you want an evidentiary here? Exactly. And I think this court has required that in the past. Don't you have to make a certain showing as a, as a predicate to get the door open? In other words, wouldn't you have to show that this is what he tried to do, et cetera, et cetera, at least get something, you know, probable cause or something to show that there's a reason to have an evidentiary hearing? Certainly you have to make a showing, Your Honor, but I would submit that perhaps there's, in the context of this type of issue where you have an individual who doesn't speak, read, write any English. That can be overcome. In other words, wouldn't you have to show that he, what efforts he actually made, that he tried to find people to help or that he tried to find Spanish materials and so on? Well, I believe that in his, in the signed declaration or affidavit that was submitted with his initial petition that was referred to in the legal, cited in the legal memorandum on the second go-round, he did make reference to the fact that he was unable to obtain any help from, he didn't give specific dates and attempts, but that he was not able to get, obtain any help from any individuals who could translate or whatnot. Now, when he filed his petition in the California Supreme Court, did he have counsel? No, he did not. He filed that himself? Yes, he did. Well, apparently he got over these hurdles enough to file that petition. That is correct. Now, what does that tell us? You know what, Your Honor? I take, I take that, I take that back for a moment as far as whether or not he had counsel or not. On his direct appeal? No. I'm sure he did on that. Right. On his direct appeal, he did. But he petitioned the California Supreme Court for writ of habeas corpus in June of 99, well out of time to mean anything in this case, in the timeline. That's correct, yes. Did he have counsel that you know of? He did not that I know of. I do believe, however, that his submission in, as far as his submission to the state court, was essentially a submission of the brief that was submitted on appeal, you know, with a different cover sheet, you know, something totally different than what was presented in federal habeas for what that's worth. Do you want to say anything else? No. Well, thank you very much. Thank you, Your Honor. Good morning. Good morning, Your Honor. May it please the Court, Elizabeth Hartwig representing the Respondents on Mr. Terhune. The issue that this Court asked to be addressed this time and the second time in this Court was whether Mr. Estorga had made a reasonable showing that equitable tolling ought to be invoked in this case because of his difficulty or inability to speak and read English. The district court had said no. The Respondent respectfully requests that this Court affirm the district court's order because he's failed to make the showing to reach an equitable tolling order unless this Court expands equitable tolling to the point where it ceases to be equitable tolling and becomes a separate new basis for some kind of stopping of the statute of limitations. Mr. Estorga's time expired prior to his filing the federal petition. The federal petition was filed without counsel. It was essentially a copy of what had been filed in the California Supreme Court without counsel. Both of those petitions were written in English. There's nothing in those petitions to indicate who was doing the writing or how it was being translated into English. No one signed it saying, I helped him put these issues together. But clearly he was able to. He had a jailhouse lawyer helping him. He did. And, in fact, he acknowledged that. He said he did? He did. He acknowledged that in his objections to my motion to dismiss when he said he had help of inmates, but he still wasn't able to find out the right time. So in a way, his argument is really, well, I didn't have good enough help. But he's given us no facts to support that. And, in fact, he was writing letters in English to his appellate counsel during the State appeal in 1997, which was several years, obviously, before the appeal was final, or a year before it was final, and two more years before the time had expired. I mean, do we know that they're in his hand? I can't tell you that. They are letters that he appended to his pleadings. Okay. But I guess we don't know who wrote those. No, I don't. Again, I don't know who wrote those letters. My assumption is either the story is not accurate in terms of his inability to speak English, and more likely somebody else wrote the letter for him, and he signed it. I have nothing to indicate that, in fact, he can read English or that he's literate in Spanish for that to become. Why doesn't he get a hearing to further develop these things? He had a hearing. He had the opportunity last time. We were in a district court, and he didn't take advantage of it. I don't know what else. No, I mean on whether he had assistance available to him or not. He didn't have a hearing on that, did he? He had the opportunity to present evidence and didn't present any, even a declaration, even a factual scenario. Was the hearing in the court where the judge? There was no appearance in court and no calling of witnesses, and there was no argument about the matter. But I'm talking about a hearing. I mean, what are you talking about for a hearing? I'm talking when it went back to the district court, the magistrate ordered responses from both sides and invited further evidence from Mr. Estorga. He filed a legal memorandum. I responded to that. There was nothing in addition in terms of a declaration or anything else that would put out some facts that needed to be resolved, nothing beyond what had already been raised in the very simplest sense that he's ---- Say bargaining in parlance, there was no proffer. In other words, he didn't come forward. No, there was no proffer. If given an evidentiary hearing ---- I could show the following. I could show it. No. There was no proffer of that sort. There was no explanation or of how he could write letters in English during the appeal process and yet miss, be unable to or make it something that made it impossible for him to meet the filing date. He has to conceive that he missed the date, so our question is what? Was it impossible? Well, does he get in under the equitable tolling exception, which in my reading is supposed to be a narrow one and the burden is on him to show that he can reach it and it's not just that he has trouble with language because that's admittedly a problem. I'm not going to quarrel with that. But as the Supreme Court said in Casey v. Lewis, it's a problem, it's a widespread problem in prisons, illiteracy, be it in English or Spanish, indigent defenders, defendants without legal training, that persists throughout the system and that is not, certainly has not to date been defined as a basis for equitable tolling in all circumstances. Otherwise, we said statute of limitations. I mean, you have Ninth Circuit cases that say that it's not a constitutional violation. In other words, the mere fact that an inmate doesn't speak English. We have no cases, certainly have no cases that say it is and the cases have been consistent in the Ninth Circuit and the ones I found in the Second Circuit and the Fifth Circuit that illiteracy, indigency, the inability to speak English well, the inability to speak English at all because the inmate is a foreign language speaker are not in and of themselves or even cumulatively so far a ground, a constitutional right, because it then starts to get to the point of not only being able to have somebody explain things in your native language so you can understand, but you have to understand correctly and in a timely fashion and you have to be legally accurate and that gets us back to the requirement for a lawyer or a properly trained legal assistant and all of the other requirements that have not to date been imposed or required at the habeas corpus level. He had counsel for trial. He had counsel on appeal. I submit that he is, on the basis of this Court's delineation of what it takes to invoke equitable tolling, he's failed to show that it was impossible for him to file in a timely fashion because of the inability to speak English or to give us any indication of why, when he was clearly able to get help from other inmates, that help wasn't available on time. He's never addressed the fact that I found this out. You know, I've known this for two years, but I couldn't find somebody good enough to write it because he found somebody who could, but the details were lacking and there's been two times in the district court now to provide those details and none have been forthcoming. I submit he's failed to meet his burden and that the district court was correct when it ordered the petition dismissed because it was untimely. Thank you, Ms. Harper. You want 30 seconds? I'll do it, Your Honor. Those types of questions are what could be answered and fleshed out in an evidentiary hearing. With respect to the constitutional right, Your Honor, I believe it's in the context of an exhausting State or the State remedies and cause and prejudice that the court has found, that illiteracy, et cetera, which is a different standard. And I would just ---- There's no real case right on point. No, there's not, Your Honor, but I would refer the courts. It wasn't cited, but Ninth Circuit case laws, I just found it, laws versus Lamarck, L-A-M-A-R-Q-U-E. It is 351 F. 3rd, 919, 2003 Ninth Circuit. And it talks about, it's a mental incompetence case, but equitable tolling. And it's on point as far as there was a remand where it was just by declaration and this Court said that basically came back to the Court and the Court ordered that the district court expand the record, the factual record by evidentiary hearing saying there's no way that the court can evaluate, any court can evaluate the strength of that petitioner's mental incompetency claim without, you know, evidence by way of witnesses in his testimony. And that's all we're asking for, a 30-minute hearing in district court. Thank you, Your Honor. Thank you, Ms. Long. Ms. Hartway, thank you very much. The case just argued is submitted. The final two cases on the calendar, 035-6625, Sky Banner Media Group versus Generation Capital, and 03-56663, Barrett versus Negrete. These cases are submitted on the briefs at this time. We'll stand and recess for this session. Thank you. All rise. Thank you.
judges: T.G. Nelson, Silverman, Tallman